LEMMON, Judge.
In this appeal from a judgment awarding plaintiff workmen’s compensation benefits for total and permanent disability, defendants question the sufficiency of proof as to (1) whether plaintiff’s allegedly disabling headaches are causally connected to the work-related accident and (2) whether the headaches are in fact disabling.
On October 3, 1974 plaintiff, who had worked for defendant-employer as a printing press operator for fourteen years, sustained a fractured ankle in a company softball game and underwent surgery. The morning after surgery he began suffering headaches caused by the spinal anesthesia.
When plaintiff’s complaints of headaches continued for several weeks, the orthopedic surgeon referred plaintiff to a neurosurgeon, who examined plaintiff twice in November. The neurosurgeon concluded that the headaches, as of that time, were not spinal headaches, because they did not follow the characteristic pattern of pain upon standing or sitting and relief upon lying down and because spinal headaches always abate after a few days or at most a few weeks. He also ruled out tension headaches of psychological origin, because these occur under pressure which builds up during the day and not upon arising in the morning, which was the time plaintiff stated his headaches were the worst. The doctor opined at trial that headaches experienced after waking up in the morning or after sudden movement such as extension of the neck are suggestive of upper cervical arthritis or of entrapment of suboccipital nerves. When neurological testing yielded normal results, he referred plaintiff to Dr. Gregory Ferris, a neurologist who specialized in treating headaches of non-surgical origin.
*596 In the meantime plaintiff had recovered completely and uneventfully from the ankle injury and returned to work on January 2, 1975, first on light duty and then to his regular duties.[1]
In February, 1975 Dr. Ferris examined plaintiff and found limitation of neck motion and muscular tightness, which he attributed to cervical arthritis revealed by X-rays. He opined that spasm, indicated by spine curvature on the X-rays, caused the headaches, particularly in view of plaintiff’s statements to him that the headaches occurred mainly after sudden movements or after periods of work in awkward positions. The doctor theorized that when the spinal anesthesia headaches subsided, plaintiff was wary of minor symptoms, and upon his return to work paid unusual attention to otherwise unnoteworthy aches and pains. Upon cross-examination Dr. Ferris conceded the difficulty of distinguishing arthritic headaches from tension headaches, because of the common factor of muscle spasm, and stated he would accept a conclusion based on psychological testing that plaintiff had tension headaches. He noted, however, that both types of headaches could exist at the same time.
In July, 1975 plaintiff consulted Dr. Patricia Cook, a neurologist, who opined that the headaches were not of organic origin, but were due to chronic tension and anxiety with pain caused by muscle contraction in the neck. However, she had not taken or examined X-rays and was unaware of any evidence of arthritis, and she admitted headaches upon awaking in the morning were more likely attributable to cervical arthritis. At trial she related the headaches to the accident, postulating that as the spinal headaches subsided plaintiff became more anxious about his physical condition and his future, causing tension and continuing headaches. Asked about disability, Dr. Cook observed that plaintiff had been working and should continue to do so. She referred plaintiff to a psychologist for testing and treatment.
The psychologist, after testing and therapy which began in October, 1975, concluded that plaintiff’s “personality picture was very compatible with the symptomatology of the tension headaches plus a variety of other symptoms in terms of agitation and depression that were concurrent with it and weren’t part of the main referring concern of the neurologist”. The psychologist observed that plaintiff’s longstanding concern with being dominated and treated unfairly and his resulting anxiety, tenseness and nervousness were not primarily neurotic (of a functional disorder), but were more in the nature of character disorders.
With the therapy plaintiff’s complaints to the psychologist went from chronic daily intense headaches to very infrequent mild headaches by January, 1976, although plaintiff began to complain again of intense headaches just before the October, 1976 trial. However, at trial plaintiff testified that he had not gotten up in the morning without a headache since surgery, and his wife stated that he had not had one day without headaches in the two years between the accident and the trial.
As to causation, plaintiff initially developed disabling headaches which were caused by the anesthesia necessitated by the accident. However, this suit is not based on the headaches immediately following surgery (all experts agreed that the spinal anesthesia headache subsided in a few weeks), but on headaches of disputed origin which apparently began as the spinal headaches were subsiding.
Every wage earner who is injured and temporarily disabled for employment because anxious about his future as family provider. Especially if he is predisposed, he may develop tension headaches or other forms of stress or compensation anxiety in some degree.
In the present case plaintiff presented evidence supporting the psychological or *597 igin of these headaches. Moreover, arthritic headaches are not relieved by psychotherapy. Since reasonable men could have drawn different conclusions from this evidence, we cannot say that the trial judge erred in concluding these headaches resulted at least in part from anxiety brought on by the accident.[2]
Nevertheless, while plaintiff’s anxiety was perhaps proved to be causally related to the accident (in the sense that any accident causes anxiety, which may be the basis for damages in tort), anxiety and related headaches, as such, are not a basis for an award of compensation benefits unless there is proof of disability produced by the anxiety.
Not one doctor described plaintiffs headaches as disabling. Dr. Cook and the psychologist both recommended continuation of work, even overtime if available. And plaintiff did in fact continue working from his January, 1975 discharge after surgery until the November, 1976 trial. Since loss of earning capacity underlies all definitions of legal disability, this evidence indicates the headaches were non-disabling.
As to loss of earning capacity considered in terms of a person’s being obliged to work in pain, plaintiff presented lay testimony that he complained of headaches at work, but presented no medical evidence to support a conclusion that the headaches would cause such substantial pain as to be deemed disabling. Moreover, the lay testimony by plaintiff, his wife, and his co-workers was contradicted by plaintiff’s own statements to the psychologist.
We conclude that this record does not support the conclusion that the headaches prevent plaintiff from performing substantially all of the duties required of him before the injury or that the performance of these duties because of economic necessity required him to work in such substantial pain as to be considered totally disabled.
For these reasons the judgment of the trial court is reversed, and it is now ordered that plaintiff’s suit be dismissed.

REVERSED AND RENDERED.

. The parties stipulated that plaintiff had a 15% permanent partial disability of the ankle as a result of the accident.
Defendant paid $2,635.00 in compensation benefits and $2,080.25 in medical expenses.

. We express doubt about the causal relationship. We note that the psychologist attributed the unusual anxiety more to personality disorder than to traumatic neurosis, but we concede that predisposition is one of the most difficult conceptual issues in the usual traumatic neurosis case.